Marvin DAVIS, Plaintiff-Appellant,

v.

FLORIDA POWER & LIGHT CO., a Florida Corporation, Defendant-Appellee.

Nos. 99-4076, 99-10524.

United States Court of Appeals,

Eleventh Circuit.

March 10, 2000.

Appeals from the United States District Court for the Southern District of Florida. (No. 97-08151-CV-DTKH), Daniel T.K. Hurley, Judge.

Before BLACK and HULL, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

HULL, Circuit Judge:

Plaintiff Marvin Davis ("Davis") appeals the entry of judgment for Defendant Florida Power & Light Company ("FPL") on his employment discrimination claims under the American with Disabilities Act of 1990 ("ADA"). After review, we affirm the district court's determination that Davis failed to establish a prima facie case of disability discrimination for two reasons. First, FPL's mandatory overtime work was an essential function of Davis's job of reconnecting electrical power service for FPL's customers. Davis was not a qualified individual protected by the ADA because he could not work the overtime FPL required. Second, Davis's requested accommodations of no or selective overtime work contravened the seniority provisions of his union's collective bargaining agreement and were unreasonable accommodations as a matter of law.

I. FACTUAL BACKGROUND

In 1985, Davis began work with FPL, a utility company providing electricity to businesses and residences throughout Florida. Overtime was required at FPL due to the nature of its electric utility business, including the need to maintain a steady flow of power, to remedy power outages, and to reconnect power

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

quickly to its customers. In completing his job application, Davis indicated his agreement to work overtime as a condition of employment.[1]

A collective bargaining agreement with the International Brotherhood of Electrical Workers ("IBEW") governed FPL's relationship with many employees, including Davis. Because most FPL jobs required overtime, that agreement dictated how FPL assigned overtime work. The agreement provided that FPL must offer voluntary overtime on a most-senior to least-senior basis. If more overtime is needed, mandatory overtime must be imposed on the most junior employees first. The agreement also allowed FPL to require employees to work "holdover overtime," which was assigned to employees already on a job and irrespective of seniority.

In 1990, Davis sustained a back injury on the job while working as a lineman. Davis was placed on "light duty" and later diagnosed as having a herniated disc. After treatment, Davis returned to "full duty." When his lineman duties aggravated his back condition, Davis's doctor suggested that he transfer to a less strenuous position.

In 1991, Davis bid for and obtained a "Street Light Maintenance" position at FPL. After a short time in this position, Davis bid for and obtained another "lineman" position.[2] When that job again aggravated Davis's back condition, FPL placed Davis on "light duty." A disagreement arose between Davis and FPL leading to a suspension for a year.

In late 1993, Davis returned to "light-duty" work and in early 1994 bid for a Connect and Disconnect ("C&D") position. The C&D position involves connecting and disconnecting electric service to FPL's

---

[1]Specifically, Davis answered "yes" to this question: "FPL must provide 24-hour-a-day service to its customers. Therefore, many of our jobs require employees to sometimes work overtime.... Are you agreeable, as a condition of employment, to work whatever schedule is necessary to help us meet ... our obligations to our customers?"

[2]Davis made this bid due to what Davis alleges were intolerable working conditions. According to Davis, his various supervisors subjected him to constant harassment and intimidation because of his disability. Because Davis does not challenge the district court's finding that pre-March 1996 conduct was time-barred, we omit the facts surrounding those allegations.

customers by installing, removing, and reading electric meters. The C&D position carries out FPL's connect and reconnect policy, which requires that customer orders be processed and executed the same day or within twenty-four hours. Davis met the requirements listed on FPL's form entitled "Essential Job Functions—Connect & Disconnect Man."[3] The form and FPL's written job description for the C&D position do not address working hours or overtime work, but the collective bargaining agreement does. That agreement lists the work schedule of a C&D employee as "five (5) days of eight (8) consecutive hours per day," and expressly grants FPL "the right to require employees to work overtime." In 1996, the 84 C&D employees worked 18,175 hours of overtime, averaging 216 overtime hours each. C&D employees work the third highest average number of overtime hours of some forty different FPL jobs, although almost all jobs require some overtime. The relatively high C&D overtime figure was in part due to FPL's aggressive same-day connect and reconnect policy. The volume and time constraints of C&D work occasionally necessitated simultaneous overtime for all C&D employees.

In 1996, Davis's doctor suggested that he work no more than eight hours a day because of his back condition. Shortly thereafter Davis was suspended. According to Davis, he was suspended because he could not work overtime. FPL contends that Davis was placed on worker's compensation leave because his medication caused drowsiness, interfering with his ability to drive his FPL truck, and because there were no "light-duty" positions available.

Over the next eight months a series of meetings, letters, and negotiations followed. Davis insisted that FPL accommodate his disability by guaranteeing him no overtime or allowing him to decide each day whether to work overtime depending on his personal assessment of his back condition at shift end. FPL refused this request, but offered Davis two options. First, Davis could return to work in a full-duty C&D position with a guarantee of no overtime for sixty days. The IBEW agreed to this sixty-day concession.

---

[3]The form listed nine different job requirements, including frequent walks on varied surfaces while wearing a 10-pound tool belt, performing duties in direct sunlight and after dark, and possessing sufficient stamina to work in inclement weather.

Second, FPL offered to allow Davis to transfer to another IBEW position or transfer to a non-IBEW position. Pursuant to the collective bargaining agreement, FPL provided Davis with a list of jobs and a seniority roster for him to determine what jobs were open to someone with his seniority. After Davis's contractual right to transfer expired, FPL extended the time period for Davis to request a transfer and provided him with information regarding average amounts of overtime per position.

Davis rejected FPL's offers, and FPL refused Davis's requested accommodations. Davis refused to return to C&D work without one of his accommodations and was terminated in March 1997.

## II. PROCEDURAL HISTORY

Davis then filed this lawsuit alleging (a) disability discrimination, in violation of the ADA and the Florida Civil Rights Act of 1992, and (b) discriminatory retaliation, in violation of the ADA, Florida's Workers Compensation Law, and Florida's Whistle Blower Act. In an order dated January 7, 1999, the district court granted summary judgment to FPL on all federal and state claims. Davis subsequently filed a motion for relief from judgment under Rule 60(b), addressing only his requested accommodations under the ADA. Fed.R.Civ.P. 60(b). In an order dated March 24, 1999, the district court denied this motion. Davis timely appealed both orders.[4] On appeal, however, Davis addresses only his ADA claims and not his state law claims. Furthermore, the issues Davis raises on appeal about his retaliation claims under the ADA lack merit.[5] Thus, we address only Davis's disability discrimination claims under the ADA.

## III. DISCUSSION

---

[4]Davis's appeal of the denial of his Rule 60(b) Motion in Appeal No. 99-10524 was consolidated with Davis's appeal from the grant of summary judgment in Appeal No. 99-4076. We review the district court's grant of summary judgment *de novo,* applying the same legal standards as the district court. *See Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). We review the denial of Davis's Rule 60(b) Motion for abuse of discretion. *See Cavaliere v. Allstate Ins. Co.,* 996 F.2d 1111, 1115 (11th Cir.1993).

[5]Davis primarily alleges that the district court erred in finding that Davis failed to establish a prima facie case of retaliation under the ADA. Because we find no merit to this contention, we affirm without further discussion. *See* 11th Cir. R. 36-1.

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a) (1994). "Indeed, the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer." *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996) (citing 42 U.S.C. 12112(b)(5)(A)). The ADA places the burden on the employee to establish a prima facie case of disability discrimination. *See Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997). To establish a prima facie case of disability discrimination, Davis must prove that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *See Morisky,* 80 F.3d at 447. As outlined below, we find that the district court correctly held that Davis failed to show that he was a qualified individual with a disability.[6]

### A. Qualified Individual

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Davis must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation. *See Holbrook,* 112 F.3d at 1526. Thus, if Davis is unable to perform an essential function of his C&D job, even with an accommodation, he is, by definition, not a "qualified individual" and, therefore, not covered under the ADA. *See Cramer v. Florida,* 117 F.3d 1258, 1264 (11th Cir.1997). In other words, the ADA does not require FPL to eliminate an essential function of Davis's job. Therefore, the first issue is whether mandatory overtime work is an essential function of the C&D position.

---

[6]FPL argues that Davis fails to establish a "disability" because his back condition does not substantially limit his major life activities. Since we find that Davis is not a qualified individual, we do not reach whether Davis has a disability within the meaning of the ADA.

Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors. The ADA provides that consideration shall be given to the employer's judgment as to what functions of a job are essential and the employer's written description for that job. *See* 42 U.S.C. § 12111(8). The ADA regulations provide that other factors to consider are: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3) (1999).

After considering these factors, the district court correctly held that mandatory overtime work is an essential function of Davis's C&D position. First, FPL deems mandatory overtime to be an essential function of that position due to the unique nature of the electric industry and FPL's same-day reconnect policy. Second, FPL's application indicated that working overtime was "a condition of employment." Davis also admitted that overtime was represented to him as a condition of employment. Third, FPL's aggressive connect and reconnect policy creates fluctuating production requirements and heightens FPL's reliance on its ability to require overtime from C&D employees. Fourth, FPL's evidence demonstrated that each C&D position undisputedly required a substantial amount of overtime work. For example, each C&D employee worked an average of 216 overtime hours in 1996. Fifth and significantly, FPL's bargained-for-agreement with the IBEW grants FPL the right to require involuntary overtime and outlines the specific methods by which it may do so. All of these factors demonstrate that mandatory overtime is an essential function of the C&D position.

We recognize that FPL's job description and form for the C&D position do not address working hours or overtime. But we disagree with Davis's argument that this means that his working hours and overtime cannot be deemed essential functions as a matter of law. Davis's argument ignores the undisputed facts that the collective bargaining agreement expressly sets forth both the working hours and the overtime requirement and that nothing in FPL's job description and form addresses those matters, much less contradicts the

collective bargaining agreement. Moreover, the job application also makes clear that overtime is a condition of employment in a C&D position.

We also reject the EEOC's argument that "working overtime" can never be an "essential function" of a job.[7] The EEOC narrowly equates "function" with task and argues that overtime is not a task to be performed. However, in FPL's electric utility business, mandatory overtime work is the means by which FPL implements its same-day connect and reconnect policy. FPL's connect and reconnect policy generates for a C&D employee certain meters that must be installed or reconnected that day. While certain equipment may be used to install and reconnect the electric service, overtime is the tool that gets that work done the same day and is thus an integral part of the C&D position. In effect, overtime work in a C&D position at this electric utility company is akin to job presence, which has been held to be an essential function of a job. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.,* 201 F.3d 894, 900 (7th Cir.2000) ("[O]ur review of the entire record in this case supports the district court's finding that regular attendance is an essential function of the tool and die maker position...."); *Tyndall v. National Educ. Ctrs. Inc.,* 31 F.3d 209, 213 (4th Cir.1994) ("An employee who cannot meet the attendance requirements of [a university teacher] cannot be considered a 'qualified' individual protected by the ADA."); *Jackson v. Veterans Admin.,* 22 F.3d 277 (11th Cir.) (holding under Rehabilitation Act that a housekeeping aid had failed to prove that he was "an otherwise qualified individual because he ha[d] failed to satisfy the presence requirement of his job"), *cert. dismissed* 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994); *see also Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1231 (11th Cir.1999) (citing with approval *Tyndall* 's discussion of job presence as an essential function under the ADA and concluding plaintiff could not prove associational discrimination because she was not a qualified individual).[8]

---

[7]The Equal Employment Opportunity Commission ("EEOC") filed an amicus brief on Davis's behalf.

[8]In an analogous situation, the First Circuit dismissed the plaintiff's ADA claim on other grounds, but nonetheless addressed the "essential function" notion within the context of the plaintiff's claim under the Family Medical Leave Act. *See Tardie v. Rehabilitation Hosp.,* 168 F.3d 538 (1st Cir.1999). The First Circuit wrote that "[a]t bottom, [plaintiff] offers no evidence that she or anyone else could perform the job in only

For all of these reasons, we conclude that the district court correctly held that mandatory overtime was an essential function of Davis's C&D position.

B.     *Unreasonable Accommodation*

We also conclude that the district court correctly found that Davis's requested accommodations were unreasonable as a matter of law. The ADA does not require accommodations, such as those Davis requested, that contravene the seniority rights of other employees under a collective bargaining agreement. In so concluding, we join eight other circuits which have held that an accommodation that contravenes the seniority rights of other employees under a collective bargaining agreement is unreasonable as a matter of law. *See Willis v. Pacific Maritime Ass'n,* 162 F.3d 561, 566-68 (9th Cir.1998); *Feliciano v. Rhode Island,* 160 F.3d 780, 786-87 (1st Cir.1998); *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1271 n. 5 (10th Cir.1998); *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir.1998); *Kralik v. Durbin,* 130 F.3d 76, 83 (3d Cir.1997); *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 810 (5th Cir.1997); *Eckles v. Consolidated Rail Corp.,* 94 F.3d 1041 (7th Cir.1996), *cert. denied,* 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997); *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114 (8th Cir.1995).[9] As the Seventh Circuit held in *Eckles,* "the

---

forty hours per week," and thus "the district court did not err in finding that working more than 40 hours per week was an essential function of the position." *Id.* at 544. The court also noted: "At oral argument, [plaintiff's] counsel argued that the time spent at a job is not a 'function' of the job; it is a capability. [Plaintiff] claims that only specific duties can be 'functions' of a position.... [Plaintiff] cites no authority for this distinction, and we believe it to be mere semantics." *Id.* at 543-44.

[9]For example, in *Willis v. Pacific Maritime Ass'n,* the Ninth Circuit held that "an employee's proposed accommodation under the ADA is unreasonable if it conflicts with a bona fide seniority system established under a [collective bargaining agreement]." *Willis,* 162 F.3d at 566; *see also Feliciano,* 160 F.3d at 787 ("[T]he failure to automatically reassign [the employee] to that position—in violation of the rights of the person who received the position under the selection process outlined in the collective bargaining agreement and departmental policies does not violate the ADA."); *Foreman,* 117 F.3d at 810 ("[T]he ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."); *Benson,* 62 F.3d at 1114 ("The ADA does not require that [the employer] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement."). A panel of the D.C. Circuit reached a contrary holding in *Aka v. Washington Hosp. Ctr.,* 116 F.3d 876 (D.C.Cir.1997), but that opinion was vacated when the case was taken en banc. The en banc court's opinion did not reach a holding on this issue, but its analysis is consistent with the rule that we adopt in this case. *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1301-03 & n. 25 (D.C.Cir.1998) (en banc).

8

ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees." *Eckles,* 94 F.3d at 1051. We agree with the Seventh Circuit that "collectively bargained seniority rights have a pre-existing special status in the law and that Congress to date has shown no intent to alter this status by the duties created under the ADA." *Id.* at 1052.[10]

Accordingly, FPL is not required to grant either of Davis's requested accommodations because they conflict with the seniority rights of other C&D employees under their union's collective bargaining agreement. That agreement expressly distributes mandatory overtime by seniority, so that those with the least seniority are compelled to work overtime first. If Davis were given the accommodation of no overtime or selective overtime depending on Davis's personal assessment of his back condition at the end of each shift, then more senior employees, who otherwise would not have to work overtime, would be required to do so, and that is not required by the ADA. *See Kralik,* 130 F.3d at 80-83 (finding accommodation of no forced overtime violates collective bargaining agreement and therefore is not required by the ADA); *Eckles,* 94 F.3d at 1045, 1051-52 (holding accommodation of being protected from being "bumped" from position conflicts with the collectively bargained rights of others who otherwise would have seniority to bump employee, so that accommodation is not required by the ADA). Therefore, the district court properly held that Davis's requested overtime accommodations were unreasonable as a matter of law because each conflicted with the applicable collective bargaining agreement.

## IV. CONCLUSION

In conclusion, we affirm the district court's grant of summary judgment in favor of FPL on all of Davis's claims and affirm the district court's denial of Davis's Rule 60(b) motion for relief from that judgment.

---

[10]In his Rule 60(b) Motion, Davis emphasized the EEOC's "Policy Guidance on Reasonable Accommodation Under the ADA ('Policy Guidance'), which was issued after the district court granted summary judgment. That Policy Guidance poses this question: 'Can an employer claim that a reasonable accommodation imposes an undue hardship simply because it violates a Collective Bargaining Agreement (CBA)?' " 12 Empl. Discrim. Rep. (BNA) 317 (Mar. 3, 1999). The Policy Guidance answers the question "no" and recommends analysis on a case-by-case basis, but notes that circuit courts have rejected this interpretation of the ADA. Joining these circuits, we find that this Policy Guidance is inconsistent with the ADA statute as construed by the courts before the EEOC issued its Policy Guidance.

AFFIRMED.