**Vernon CRAWFORD, Plaintiff,**

v.

**AT & T and COMMUNICATIONS WORKERS OF AMERICA, LOCAL 3250, Defendants.**

**No. 1:98–CV–2566–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 20, 2000.

Howard Raymond Evans, Shaw, Evans & Dallas, Atlanta, GA, for Vernon Crawford.

Vernon Crawford, College Park, GA, pro se.

John Shiver Snelling, Alston Dayton Correll, III, Desha D. Dardenne, Troutman Sanders, David L. Forbes, AT & T Corporation, Law & Government Affairs, Atlanta, GA, for AT & T.

John L. Quinn, Nakamura Quinn & Walls, Birmingham, AL, for Communications Workers of America, Local 3250.

## ORDER

THRASH, District Judge.

This is an action for employment discrimination brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, and breach of the duty of fair representation under Section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185. It is

before the Court on Defendant's Motion for Summary Judgment [Doc. 32], and Defendant's Motion to Strike [Doc. 37]. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment and denies as moot Defendant's Motion to Strike.

## I. BACKGROUND

Plaintiff was employed by AT & T as a Customer Care Representative from May 28, 1996 to June 20, 1997. During this time, Plaintiff was a member of the Communication Workers of America ("CWA") Union, Local # 3250. Plaintiff was terminated from his employment at AT & T on June 20, 1997. AT & T terminated Plaintiff for job abandonment due to his excessive absenteeism and failure to return to work following leave. According to Plaintiff, his certified disability leave extended up to and included the date of his termination. He asserts that he could not legitimately have been terminated on a day covered by leave and, as such, his termination was wrongful.

On August 20, 1997, Plaintiff filed a grievance with Defendant CWA protesting his termination. The grievance process is set forth in the collective bargaining agreement between AT & T and the CWA. To initiate a grievance, the employee completes a standard grievance form permitting the local union to access the employee's records with the company. In Step One of the grievance process, the employee's department representative notifies the company of the grievance and schedules a meeting between himself and the employee's first-level supervisor at the company. If the grievance is not resolved at Step One, the grievance may be appealed to Step Two upon the judgment of the local union that the grievance should be advanced. In Step Two of the grievance procedure, the employee's department representative notifies the company of his plans to appeal the grievance and schedules a meeting between Local 3250 Vice President William G. Redmond and the employee's second-level supervisor. Step Two can be followed by an appeal to the CWA District Three regional office in Decatur, Georgia. At this level, a District Three staff member meets with the company's labor relations representative in an attempt to resolve the grievance. The final stage in the grievance process is an appeal to arbitration. According to Mr. Redmond, the decision whether to appeal a grievance at *any* stage involves consideration of factors such as the strength of the company's versus the employee's documentation, the employee's performance history, and independent external sources such as company doctor reports versus the employee's doctor reports.

After Plaintiff filed his grievance, Plaintiff's department representative, Mr. Dwayne Gray, held a Step One meeting with Ms. Marie Whidby, a member of AT & T management, to request the Plaintiff's reinstatement. Mr. Gray argued that Plaintiff was confused as to the date he was to return to work. On September 26, 1997, AT & T formally denied Plaintiff's grievance and refused to reinstate him citing excessive absenteeism. AT & T's records reflected that Plaintiff actually worked only two and one-half months during the thirteen months that he was formally employed by AT & T. An additional Step One meeting was held, but union officials were still unable to persuade AT & T to reinstate Plaintiff. CWA admitted it had no evidence or documentation to explain Plaintiff's absences, nor any information that could serve as the basis for a new or more compelling argument for Plaintiff's reinstatement.

Following completion of the Step One process, Plaintiff's grievance was forwarded to Mr. Redmond. After reviewing the records to ensure that there had been a

thorough investigation, Mr. Redmond concluded that pursuing the grievance further would be futile. Mr. Redmond also asked Columbus H. Grizzle, Jr., President of Local Union 3250, to review Plaintiff's file. Mr. Grizzle concluded that based on past arbitration decisions involving similar absenteeism, Plaintiff would be unsuccessful if the grievance was pursued further. On October 13, 1997, CWA concluded that it could not prevail at arbitration and officially closed the file on Plaintiff's grievance.

On February 26, 1997, the Plaintiff filed a charge of discrimination with the EEOC alleging that he was discriminated against by AT & T on the basis of sex, disability, and in retaliation for filing grievances to protest the company's unfair labor practices. Plaintiff filed similar charges with the EEOC against CWA on October 31, 1997. On May 29, 1998, the EEOC dismissed the Plaintiff's charge of discrimination against both AT & T and CWA. On December 17, 1997, Plaintiff filed a charge with the National Labor Relations Board ("NLRB") alleging that the CWA failed to represent him properly in violation of Section 8 of the National Labor Relations Act. The NLRB Region Office dismissed Plaintiff's charges against CWA finding that there was no merit to his claim and that CWA had acted properly. The NLRB Office of Appeals affirmed the dismissal on June 11, 1998. On August 28, 1998, the Plaintiff filed this action against AT & T and CWA alleging that both entities discriminated against him on the basis of his alleged disability, and that CWA breached its duty of fair representation. Plaintiff and Defendant AT & T subsequently filed a joint stipulation of dismissal as to all of Plaintiff's claims filed against AT & T on December 28, 1999. Thus, the only claims that remain are those asserted by Plaintiff against Defendant CWA.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. AMERICANS WITH DISABILITIES ACT

Plaintiff asserts that Defendant CWA discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.* The ADA prohibits covered entities from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). According to the ADA, labor unions are included in the definition of covered entities. 42 U.S.C. § 12111(2).

To establish a *prima facie* case of discrimination pursuant to the ADA, "a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as a result of his disability." *Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 910 (11th Cir.1996). A plaintiff must also show that the covered entity had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Gordon,* 100 F.3d at 910–11. If a plaintiff establishes these three elements, the ADA imposes on employers a duty to provide reasonable accommodation for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A); *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997). It is the employee's burden to identify a reasonable accommodation that would allow the employee to perform his job. *Willis v. Conopco, Inc.,* 108 F.3d 282, 284–85 (11th Cir.1997). Establishing undue hardship is an affirmative defense to be pled and proven by the employer. *Willis,* 108 F.3d at 286.

"In order to state a claim for wrongful termination under the ADA, a plaintiff must first prove that he has a disability, as defined by the Act." *Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir.1998). Disability is defined in three ways as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Merely proving the existence of a physical or mental impairment, without addressing any limitation on major life activities, is not sufficient to prove disability under the Act." *Standard,* 161 F.3d at 1327. The phrase "major life activities" includes functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In determining whether an impairment is substantially limiting, the court should consider the nature and severity of the impairment, its expected duration, and its long-term impact. 29 C.F.R. § 1630.2(j)(2). Individuals claiming substantial limitations in the major life activity of working must show that their condition "significantly 'restrict[s] their] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Standard,* 161 F.3d at 1327.

Although never clearly stated in Plaintiff's pleadings, it is apparent from Plaintiff's deposition that his alleged disability is depression. Depression is undoubtedly a mental impairment. *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996). Plaintiff, however, must also show that it significantly limits a major life activity. Plaintiff asserts that he is substantially limited in the major life activity of working. The basis for Plaintiff's claim is that his depression required a significant period of time away from work for treatment. Nevertheless, Plaintiff has proffered no evidence, medical or otherwise, demonstrating his need for treatment during work hours which would account for his absenteeism. Indeed he was planning to come to work on the Monday following the Friday that AT & T terminated his employment. Additionally, Plaintiff sought work immediately after his termination from several employers, and stated in his deposition that had he been able to secure employment from these employers, he would have been capable of working. (Dep. Vernon Crawford, p. 128–29). After his termination, Plaintiff did work part time at Lucent Technologies, but was unable to obtain permanent employment. (Dep. Vernon Crawford, p.

188–189). The present case may be distinguished from the Eleventh Circuit's decision in *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130 (11th Cir.1996), where the court found a genuine issue of material fact regarding whether an employee with depression was substantially limited in a major life activity. *Pritchard*, 92 F.3d at 1134. The district court held that the employee's depression, which prevented her from working as an engineer in the nuclear field, did not substantially limit a major life activity as she was still able to serve as an engineer in a non-nuclear field. The Eleventh Circuit reversed, holding that there was a genuine issue of material fact as to whether the employee's depression substantially limited her in a major life activity. In *Pritchard* the employee had produced an affidavit by her doctor that although she was able to return to work in a non-nuclear field, she still suffered from physical and mental symptoms associated with her depression, such as marked fatigue, lack of energy, lack of interest, poor concentration, memory problems, and suicidal thoughts. *Pritchard*, 92 F.3d at 1134. Plaintiff in the present action, however, has produced no evidence that he suffers from any physical or mental symptoms which inhibit his ability to work. In fact, Plaintiff stated in his deposition that, despite his depression, he was capable of working, walking, breathing, eating, learning and sleeping. [Dep. of Vernon Crawford, pg. 132]. Plaintiff has not demonstrated that he is unable to perform a "class of jobs or a broad range of jobs in various classes." *Standard*, 161 F.3d at 1327. Based on the evidence submitted, the Court concludes that Plaintiff has not raised a genuine issue of material fact that he is substantially limited in a major life activity.

Plaintiff also asserts that he falls within the "regarded as" definition of disability. 42 U.S.C. § 12102(2)(c). To be "regarded as" an individual with a disability pursuant to the ADA, one must either (1) have an impairment that does not substantially limit a major life activity, but be treated by a covered entity as constituting such limitation; (2) have a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) have no impairment but be treated by a covered entity as having a substantially limiting impairment. 29 C.F.R. § 1630.2(1). The only evidence Plaintiff cites as evidence that CWA "regarded" Plaintiff as having a substantially limiting disability is an alleged statement made by Dwayne Gray, the union representative who handled Plaintiff's grievance at Step One, that Plaintiff was "crazy." This statement does nothing to show Mr. Gray or CWA regarded Plaintiff as suffering from an impairment which limited his working ability. The Eleventh Circuit came to a similar conclusion in *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir.1998) when they held the statement that an employee "wasn't able to do [his] job anymore, and ... perhaps [he] wasn't fit for [his] job anymore" was not sufficient to conclude that the covered entity regarded the employee as disabled. *Standard*, 161 F.3d at 1328. The alleged statement made by Dwayne Gray does not in any way address Plaintiff's ability to work due to an impairment. There is no further evidence that CWA treated Plaintiff as substantially limited in a major life activity. The Court concludes that Plaintiff does not have a disability within the meaning of the ADA. Consequently, Defendant's Motion for Summary Judgment must be granted on this ground.

In addition, Plaintiff cannot establish the second element of a *prima facie* case of discrimination pursuant to the ADA. Once a plaintiff succeeds in establishing a disability within the meaning of the ADA, the plaintiff must then prove that he is a qualified individual. A quali-

fied individual is defined as "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Several factors are considered in deciding whether a job function is essential. The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential and the employer's written description for that job." 42 U.S.C. § 12111(8); *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). The Eleventh Circuit has held that in addition to possessing the required skills necessary to perform the essential job functions, an employee must be able to demonstrate those skills by reporting to work on a regular basis, thereby making attendance an essential function of most jobs. *Jackson v. Veterans Admin.*, 22 F.3d 277 (11th Cir.1994)[1]. As a Customer Care Representative, Plaintiff was required to field calls from customers regarding their AT & T service. Plaintiff needed access to AT & T's network and phone system to perform this job. Therefore, Plaintiff's presence on-site was a necessary requirement to function as a Customer Care Representative. "The law does not protect absenteeism or employees who take excessive leave and are unable to perform the prerequisites of their jobs." *Stevens v. Stubbs*, 576 F.Supp. 1409, 1415 (N.D.Ga.1983). As presence is an essential job function that Plaintiff cannot fulfill with or without accommodation, he is not a qualified individual under the ADA.

■ Even if Plaintiff could make out a *prima facie* case against Defendant CWA, his case nevertheless would not survive summary judgment. There is no direct evidence of discrimination. Upon establishing a *prima facie* case of discrimination through circumstantial evidence, the case proceeds according to the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant to this framework, the burden of production shifts to the defendant who must articulate a legitimate, non-discriminatory reason for the challenged decision; the plaintiff then bears the ultimate burden of persuasion that the defendant's proffered reason is a pretext for discrimination. *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322 (11th Cir. 1999). CWA has stated that its decision not to appeal the Plaintiff's grievance through arbitration was based on its evaluation that Plaintiff would not succeed if the grievance was pursued further. Union officials decided not to further appeal Plaintiff's grievance because Plaintiff had provided them no evidence to refute or explain Plaintiff's high rate of absence, and past arbitration decisions indicated that Plaintiff would not succeed in being reinstated. This decision is neither discriminatory nor illegitimate, and the burden shifts back to Plaintiff to offer evidence that this reason is pre-textual. Plaintiff has failed to provide any evidence that the union's decision not to pursue his grievance was based on more than his excessive absenteeism from work. Therefore, even if Plaintiff could establish a *prima facie* case of discrimination pursuant to the ADA, he has not satisfied his burden according to the *McDonnell Douglas* framework. Defendant's Motion for Summary Judgment on the ADA claim must be granted.

### B. SECTION 301 CLAIM

■ Plaintiff also brings a "hybrid" claim pursuant to § 301 of the LMRA

---

1. This case was decided under the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* Cases decided pursuant to the Rehabilitation Act are relevant to an ADA discussion because the standards applied to both statutes are the same. 29 U.S.C. § 794(d).

against Defendant CWA. 29 U.S.C. § 185. In order to recover against the union on a § 301 claim, Plaintiff must demonstrate both a violation of the collective bargaining agreement by the employer and a breach of duty of fair representation by the union. *Foster v. United Steelworkers of Am.*, 752 F.2d 1533, 1534 (11th Cir.1985). Plaintiff claims that AT & T breached the collective bargaining agreement by terminating him in violation of the company's progressive discipline policy. Plaintiff also alleges that AT & T breached the collective bargaining agreement because his termination violated company policy prohibiting termination while on certified leave. Because there is a dispute about whether Plaintiff was terminated while on leave, the Court will construe the evidence on this issue in favor of Plaintiff. Nevertheless, Plaintiff has not shown a violation of the collective bargaining agreement. He has not produced these written policies for the court's review nor shown that they were a part of the collective bargaining agreement. The Court has no more than Plaintiff's conclusory allegations about the terms and alleged violations of these policies. Conclusory allegations without any supporting facts have no evidentiary value. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). Additionally, evidence setting forth legal conclusions is insufficient to meet Plaintiff's burden of raising a genuine issue of material fact to oppose summary judgment. *Wood v. City of Lakeland*, 203 F.3d 1288, 1292 (11th Cir.2000). Consequently, Plaintiff has failed to raise a genuine issue of material fact as to whether AT & T breached either a progressive discipline policy or any other company policy contained in the collective bargaining agreement when it terminated Plaintiff.

Furthermore, Plaintiff has not shown that the union abused its broad discretion in refusing to pursue his grievance further. Any review of union actions is highly deferential because of the policy that unions need wide latitude to ensure effective performance of their responsibilities. *Air Line Pilots Ass'n, Int'l. v. O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). A union does not breach its duty of fair representation unless the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. 1127. Consequently, as the Eleventh Circuit has held, a union may determine that a member's grievance is without merit and lawfully refuse to pursue the grievance. *McCollum v. Bolger*, 794 F.2d 602, 612 (11th Cir.1986) (holding that a determination by the union that a grievance is without merit and will not be pursued is not a breach of the duty of fair representation); *Stanley v. General Foods Corp.*, 508 F.2d 274, 275 (5th Cir.1975) (holding that "union met its obligation of fair representation by pursuing employee's grievance to a point where further action would have been fruitless"); *Turner v. Air Transport Dispatchers' Ass'n*, 468 F.2d 297, 300 (5th Cir.1972) (holding that "[a] union's broad discretion in prosecuting grievance complaints includes not only the right to settle the disputes short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit").[2] This is true despite the fact that an employee's

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the

grievance may later be determined to be meritorious. *Turner*, 468 F.2d at 299. As long as the union reasonably exercised its judgment in closing the employee's case, there is not a breach of the fair representation duty. *Vaca*, 386 U.S. at 193–95, 87 S.Ct. 903.

 The Eleventh Circuit has elaborated on the standards to be met in proving a breach of fair representation claim by holding that unless the union's actions were "with reckless disregard for the employee's rights or was grossly deficient," no breach will be found. *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206–07 (11th Cir.1982). Union representatives are not expected to perform at the level of trial advocacy. *Harris*, 668 F.2d at 1206; *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1127 (5th Cir.1980) (holding that "[t]he union representative is not a lawyer and he cannot be expected to function as one"). Therefore, neither negligence nor mistake in judgment on the part of the union will support a claim that the union breached its duty of fair representation. *Harris*, 668 F.2d at 1206. Essentially, the Eleventh Circuit holds that a union's actions are arbitrary, discriminatory, or in bad faith only when the union "arbitrarily ignores a meritorious grievance or processes it in a perfunctory manner." *Id.* at 1206.

 Plaintiff asserts that Defendant CWA breached its duty of fair representation by refusing to challenge the company's reason for his termination. Plaintiff believes that the company's reason for his termination, job abandonment, could not be valid because he was still on leave when terminated. Despite this allegation, Plaintiff must show more to establish that the Union's actions were merely perfunctory. A claim that the union acted

"perfunctorily" would require a "demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention." *Id.* at 1207. Defendant CWA did not act in a perfunctory manner while handling Plaintiff's grievance. On the contrary, two Step One meetings were held between union representative Dwayne Gray and AT & T manager Marie Whidby. During these meetings, Mr. Gray pleaded Plaintiff's case to AT & T, asserting that Plaintiff was sincerely confused as to the date of his return to work after his certified leave had ended. AT & T officials refused to accept Plaintiff's explanation for his absences and would not reinstate his employment. The union had no evidence from Plaintiff to refute the company's attendance records; therefore, Mr. Gray had nothing else to argue on Plaintiff's behalf. However, the union went further. · After the two Step One meetings, Plaintiff's grievance was forwarded to Mr. Redmond for review. Mr. Redmond concluded that a thorough investigation of the facts and circumstances had been conducted by Plaintiff's department representative. Mr. Redmond also contacted Mary Walraven, AT & T District Manager of Health Affairs, to request what additional information might be marshaled to support reconsideration of Plaintiff's termination. No new information was gained during this conversation and Mr. Redmond concluded that appeal to the Step Two stage was not warranted. Mr. Redmond asked Mr. Grizzle, Union President, to review Plaintiff's grievance and render his opinion in the matter. Based on Plaintiff's unrefuted high rate of absence and past arbitration decisions, Mr. Grizzle also concluded that Plaintiff's grievance would not be meritorious. At this point, Plaintiff's grievance was closed.

Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

The Court cannot say, given the wide level of discretion afforded unions to conduct their responsibilities, that a reasonable jury could find that the union has breached its duty of fair representation. Plaintiff's argument that the Union representation was either inept or ineffective must fail.

### C. MOTION TO STRIKE

In light of the Court's ruling on Defendant's Motion for Summary Judgment, no issue remains regarding Defendant's Motion to Strike. Accordingly, Defendant's Motion to Strike is denied as moot.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment [Doc. 32] is GRANTED, and Defendant's Motion to Strike [Doc. 37] is DENIED.