[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11747
Non-Argument Calendar
_____

D.C. Docket No. 7:12-cv-04014-SLB


KIMBERLY AGEE,

Plaintiff-Appellant,

versus

MERCEDES-BENZ U.S. INTERNATIONAL, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 30, 2015)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Kimberly Agee appeals the district court's order entering summary

judgment on her disability discrimination claim in favor of Defendant Mercedes-

Benz U.S. International, Inc.  After closely reviewing the record and the parties'

briefs, we affirm.

## I.    Background

Plaintiff began working as a "team member" in Defendant's Alabama

automobile assembly plant in April 2005.  From March 2009 through June 2010,

Plaintiff took a leave of absence while she treated her breast cancer.  When

Plaintiff returned to work in June 2010, she was assigned to work in the body shop.

Plaintiff later developed pain in her arm related to her breast cancer surgery.  On

April 11, 2012, she obtained a note from her personal physician, Dr. April

Maddux, stating that she should lift no more than fifteen pounds.  Over the next

few weeks, Defendant reassigned Plaintiff to different stations in the body shop to

accommodate her fifteen-pound restriction.

Plaintiff also found out in April 2012 that she was pregnant.  On April 26,

2012, Plaintiff obtained a medical note from her OB-GYN, Dr. Nathan Ross,

stating that Plaintiff was "not to work more than 40 hours/week."  Defendant's

medical department told Plaintiff that the note did not contain sufficient

information about why Plaintiff could work only 40 hours per week, so on April

30, 2012, Plaintiff got another note from Dr. Ross explaining that she was not to

work over 40 hours per week and could not "do any heavy lifting, pulling or

2

pushing due to her pregnancy." Plaintiff further provided Defendant another note from Dr. Maddux with a seemingly indefinite restriction, stating that "no more than 40 hours a week should be expected of her due to her medical limitations." Defendant's medical department told Plaintiff that it still needed more information about the restrictions on lifting, pushing, and pulling so it could determine the appropriate placement for her. Plaintiff told the medical department that because she had already brought four excuses, she did not know what else Defendant wanted, and so Defendant needed to call the doctors and talk to them. Plaintiff never authorized Defendant to speak to her doctors, but Defendant did not expressly ask her to sign any release forms, either.

On May 2, 2012, Plaintiff met with Defendant's manager for safety, security, and medical services, as well as a team relations representative. The company officials informed Plaintiff that Defendant did not accommodate a permanent 40-hour workweek restriction. They told her that she was being placed on unpaid family medical leave, and she needed to go back to her doctors to get her restrictions lifted or she would be fired. Plaintiff went home and later received family medical leave paperwork. She never filled it out and instead notified Defendant in a May 10, 2012 letter that she declined to take family medical leave.

3

On May 21, 2012, Defendant sent Plaintiff a letter and another copy of the family medical leave paperwork, including medical release forms.  Defendant summarized in the letter that Plaintiff had presented three working restrictions:  (1) Plaintiff could not lift more than 15 pounds as a result of her breast cancer surgery, (2) Plaintiff could not work more than 40 hours per week, although it was not clear why this limitation was required, and (3) Plaintiff could not work more than 40 hours per week during her pregnancy.  The first two restrictions were indefinite, and the third was of course limited to the term of her pregnancy.  The letter noted that the restriction on lifting had been implemented immediately, and Defendant said it was able to accommodate the temporary restriction of 40 hours per week due to the pregnancy as long as Plaintiff completed the necessary Family Medical Leave Act ("FMLA") paperwork.  Defendant could not accommodate the indefinite weekly restriction on work hours, however.  Defendant explained that this was because assembly plant positions "require flexibility in moving between different job assignments and work schedules."  Finally, Defendant reminded Plaintiff that the deadline to return the FMLA paperwork was May 25, 2012.  Failure to return the documents would result in Plaintiff being considered absent since May 3, 2012.  Again, Plaintiff never took the forms to her doctors or authorized them to speak to Defendant.

4

On June 20, 2012, Defendant sent another letter to inform Plaintiff that her absences since May 3, 2012, were considered unexcused.  Furthermore, Defendant asked her by June 25, 2012, "either (1) [to] provide to [Defendant's] medical department the necessary paperwork and objective medical documentation previously requested, or (2) return to [work] with documentation releasing you to return to work at a level that allows you to perform the essential functions of your job."  Otherwise, Plaintiff's employment would be administratively terminated. On June 22, 2012, Plaintiff responded in writing that she was not requesting family medical leave but denied abandoning her job.  As a result, Defendant terminated her effective June 26, 2012.

Plaintiff brought this action alleging disability discrimination under the Americans with Disabilities Act of 1990 ("ADA").[1]  The district court granted summary judgment to Defendant, finding that Plaintiff was not a "qualified individual" under the ADA because she could not perform an "essential function" of her job:  the ability to maintain a flexible work schedule and work mandatory overtime.  *See Agee v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:12-CV-4014-SLB, 2015 WL 1419080, at *9–10 (N.D. Ala. Mar. 26, 2015).  Moreover, the court

---

[1]  Plaintiff also alleged pregnancy discrimination and retaliation, but those claims are not at issue in this appeal.

found that Defendant articulated legitimate, nondiscriminatory reasons for firing Plaintiff, but she failed to produce any evidence of pretext. *Id.* Plaintiff appeals.

## II.    **Discussion**

We review the grant of summary judgment *de novo*. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998). We view the evidence in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the individual's disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). We apply the burden-shifting framework from employment-discrimination claims under Title VII to ADA claims. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). In order to establish a prima facie case of disability discrimination, the employee must show that: (1) she is disabled, (2) she was a qualified individual at the relevant time, and (3) she was discriminated against because of her disability. *Lucas*, 257 F.3d at 1255.

6

Defendant first argues that Plaintiff was not a qualified individual because her indefinite restriction of working a maximum of 40 hours per week prevented her from maintaining a flexible work schedule and working mandatory overtime, which Defendant says is an essential function of jobs at the assembly plant.  Under the ADA, a qualified individual is someone who can perform the essential functions of the employment position with or without a reasonable accommodation.  42 U.S.C. § 12111(8).  An accommodation is reasonable and necessary under the ADA only if it enables the employee to perform the essential functions of the job.  *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007).  The ADA does not require an employer to eliminate essential functions of the job; however, if an individual is unable to perform them, even with the accommodation, she cannot meet the definition of a qualified individual.  *Id.*

An essential function of a job is a fundamental duty of the position that an individual with a disability is actually required to perform, and we evaluate whether a particular function is essential on a case-by-case basis.  *Id.* at 1257–58. Substantial weight is accorded to the employer's judgment as to which functions are essential.  *Id.* at 1258.  In addition, other factors courts consider include:  (1) written job descriptions prepared for interviewing applicants, (2) the amount of time spent performing the function, (3) the consequences of not requiring the

7

employee to perform the function, and (4) past work experience of employees in similar jobs.  29 C.F.R. § 1630.2(n)(3).

In *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000), we held that working overtime can be an essential function of a job.  In that case, we found that overtime was essential to an electrical company's "connect and reconnect" positions because (1) the employer considered mandatory overtime an essential function due to the unique nature of the electric industry and the company's same-day reconnect policy, which required customer orders to be processed within 24 hours; (2) the employer's application said that working overtime was a condition of employment; (3) fluctuating production requirements heightened the employer's reliance on its ability to require overtime from its employees; (4) the connect and disconnect employees worked an average of 216 overtime hours per year; and (5) the employer's bargaining agreement with a union gave it the right to institute mandatory overtime.  *Id.* at 1305.

Similarly, here a human resources manager testified that Defendant considers a flexible work schedule, including the ability to work overtime, an essential function of all assembly plant jobs.  The job description for a production team member states that the job requires "[f]lexibility in moving between different job assignments and work schedules," and one of the essential functions includes

8

"be[ing] assigned different work situations as production or other needs require." The employment application Plaintiff filled out stated that "business needs" may require overtime. Defendant's team member handbook further explains that employees are "expected to work a reasonable amount of overtime as required for production schedules and as a condition of initial and continued employment." Defendant thus deems overtime an essential function of a team member's job.

Furthermore, the nature of an automobile assembly plant requires overtime from its employees. Plaintiff acknowledged that she and other team members worked flexible schedules and put in overtime while she was employed at the assembly plant. Sometimes overtime was required when the plant started new assembly lines. Other times it was required because certain lines fell behind in production. It was often unpredictable, she explained, because additional hours might be required if a line broke down, and even if a line were productive on a given day, the workers still might do overtime. So in Plaintiff's words, "you just go in there and be prepared to work." Like in *Davis*, these fluctuating production requirements heightened Defendant's reliance on overtime. We further held in *Davis* that because each "connect and reconnect" electrical worker clocked an average of 216 hours of overtime in one year, each position required substantial overtime work. 205 F.3d at 1305. Here, each team member worked an average of

9

three hours of overtime per week in 2012, or 156 hours for the year, demonstrating that production jobs require substantial overtime. Thus, given the unique requirements of an automobile manufacturer and the need to maintain production on various assembly lines, the ability to work overtime is an integral part of production team members' positions.

Next, Plaintiff fails to show that a reasonable accommodation would have enabled her to perform the essential functions of her job, including working overtime. It is the employee's burden to identify a reasonable accommodation and to show that the accommodation allows her to perform the job's essential functions. *Lucas*, 257 F.3d at 1255–56. Plaintiff argues that Defendant could have reassigned her to a vacant position, but she fails to dispute Defendant's evidence that all positions at its assembly plant required overtime.[2] Again, an employer is not required to eliminate an essential function of a job to accommodate an

---

[2] The district court struck Plaintiff's hearsay evidence that employees in certain positions told her they did not work overtime. *Agee v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:12-CV-4014-SLB, 2015 WL 1419080, at *1–3 (N.D. Ala. Mar. 26, 2015). Plaintiff does not challenge this ruling on appeal. Therefore, we agree with the district court that there is no admissible evidence in the record that there were other jobs at the plant that did not require overtime.

Plaintiff further argues that Defendant's human resources manager admitted in a deposition that Defendant could have accommodated a 40-hour workweek. But a review of that testimony shows that the manager acknowledged only that Defendant could accommodate a *temporary* restriction of 40 hours per week—an accommodation Defendant agreed to make while Plaintiff was pregnant. There is thus no evidence that any assembly plant jobs would have allowed an employee to work a permanent schedule limited to 40 hours per week.

employee. *Holly*, 492 F.3d at 1256. Because Plaintiff could not work overtime with or without an accommodation, she was not a qualified individual under the ADA.[3] Accordingly, Plaintiff fails to establish a prima facie case of disability discrimination.

Even if Plaintiff did set forth a prima facie ADA claim, Defendant articulates legitimate, nondiscriminatory reasons for firing her, and Plaintiff fails to carry her burden of showing that these reasons were pretext for disability discrimination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Specifically, Plaintiff repeatedly refused to comply with Defendant's request that she fill out the FMLA paperwork. She was asked to supply more information about the nature of her restrictions so Defendant could try to work out an accommodation, but she failed to do so. She was even expressly warned that she needed to comply with these requests or she would be fired. But Plaintiff was absent from work for several weeks without an excuse, so Defendant had a legitimate, nondiscriminatory reason to terminate her employment.

Plaintiff does not expressly point to evidence of pretext on appeal, so Defendant argues that Plaintiff waives the issue. Even assuming that Plaintiff

---

[3] Plaintiff argues for the first time on appeal that instead of firing her, Defendant should have designated her unexcused leave as family medical leave even though she refused to fill out the paperwork. Because Plaintiff did not raise that argument below, it is waived. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Moreover, she cites no authority to back up her claim.

11

preserved the pretext issue with some of her arguments, her claim fails.  The

closest Plaintiff comes to arguing pretext is when she contends that Defendant

failed to tell her she could have worked 40 hours per week and used intermittent

family medical leave to cover any overtime she could not work.  Even if Plaintiff

misunderstood Defendant's intentions, that misunderstanding is not evidence that

Defendant used her absences as pretext to discriminate against her.[4]  On the

contrary, the evidence in the record indicates that Defendant was willing to

accommodate her restriction on lifting, pushing, and pulling, as well as her 40-hour

per week restriction for the duration of her pregnancy.  Defendant clearly told her

as much in its May 21, 2012 letter.  With respect to the indefinite 40-hour per week

restriction, Defendant attempted to engage Plaintiff "in an expanded discussion to

see if some other type of restriction would serve the same health related purpose

without imposing upon an essential function of [her] job."  Yet Plaintiff continued

to refuse FMLA leave or engage in an interactive process with Defendant.

"Liability simply cannot arise under the ADA when an employer does not obstruct

an informal interactive process; makes reasonable efforts to communicate with the

employee and provide accommodations based on the information it possesses; and

the employee's actions cause a breakdown in the interactive process."  *Stewart v.*

---

[4]  Nor does this argument alter the fact that Plaintiff was not a qualified individual, as she could not have worked a permanent schedule limited to 40 hours per week while using intermittent FMLA leave.

12

*Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  In short, because Plaintiff refused to follow Defendant's instructions or otherwise engage in an interactive process, Plaintiff's absences were unexcused, and Defendant had a legitimate, nondiscriminatory reason to terminate her employment.  Plaintiff fails to point to any evidence of pretext, and thus the district court properly granted summary judgment to Defendant.

## III.    Conclusion

For all the above reasons, we affirm the district court's grant of summary judgment to Defendant.

**AFFIRMED.**