Peter MUSARRA, Plaintiff,

v.

VINEYARDS DEVELOPMENT CORPORATION, a Florida corporation, and Premier Builders, Inc., a Florida corporation, Defendants.

No. 2:02–CV–301–FTM–29SP.

United States District Court, M.D. Florida, Fort Myers Division.

Nov. 10, 2004.

Bill Hazzard, Damian Taylor, Conroy, Coleman & Hazzard, P.A., Naples, FL, for Defendants.

Darrin Phillips, Naples, FL, for Plaintiff.

### OPINION AND ORDER

STEELE, District Judge.

This matter comes before the Court on Defendant's Motion for Reconsideration of Order Denying Motion for Summary Judgment on Counts III Through VI (Docs.# 109, 111), filed on October 27 and 29, 2004. Plaintiff filed a Response (Doc. # 116) in opposition to the motion on November 5, 2004.

In an Opinion and Order (Doc. # 107) filed October 20, 2004, the Court denied defendants' Motion for Summary Judgment (Doc. # 65) as to Counts III through VI because there were no Social Security Administration documents included in the summary judgment record, and this omission precluded the Court from granting the motion. Defendants have now filed documents from the Social Security Administration concerning plaintiff's application for total disability benefits, as well as other documents from a private insurer. The Court finds that there is good cause to reconsider defendant's motion for summary judgment on these counts, and therefore grants the motion for reconsideration. The Court will reconsider the merits of defendant's motion for summary judgment as to Counts III through VI. Accordingly, the Court's prior Opinion and Order (Doc. # 107) is vacated to the extent that it addresses Defendants' Motion for Summary Judgment (Doc. # 65) as to these counts.

### I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Rice–Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir.2000), *cert. denied* 534 U.S. 815, 122 S.Ct. 42, 151 L.Ed.2d 14 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999). Generally, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir.2003).

### II.

For summary judgment purposes, the court accepts the following basic facts: Peter Musarra (Musarra or plaintiff) was

hired by defendants[1] in November, 2000, as the Director of Purchasing. On August 25, 2001, plaintiff suffered a heart attack while traveling on a plane for personal reasons. Plaintiff's fiancee informed defendants of his heart attack approximately two days after its occurrence, and plaintiff was given a week off with pay. On September 4, 2001, plaintiff was evaluated by his physician, who diagnosed heart disease and instructed him to take the rest of September off from work and then to return on a half-time basis through October, 2001. Plaintiff relayed these medical instructions to defendants on September 4, 2001, and defendants approved plaintiff's medical leave request with pay.

On September 6, 2001, plaintiff filed a claim for workers compensation under Florida Statute 440, asserting that his heart attack was due to stress from upper management. Plaintiff's claim included unflattering comments about defendants and their upper management employees. Plaintiff also applied for and ultimately received Social Security disability insurance benefits on the basis of total disability.

Defendants terminated plaintiff's employment on September 12, 2001, and informed him of the termination on September 24, 2001. The reasons defendants now give for the termination are the disparaging comments plaintiff made to the workers compensation carrier concerning upper management, plaintiff's statements that he could no longer work for the company, work deficiencies discovered in plaintiff's performance when his job was covered by other employees during his time off after the heart attack, or some combination of the above.

**III.**

In Count III, Plaintiff Musarra alleges that defendants violated the Americans with Disabilities Act (ADA) by failing to provide a reasonable accommodation. Plaintiff asserts that he could perform the essential functions of his job if he was provided a modified work schedule, permitted to be absent while recovering from the heart attack, and then return to work on a part-time basis for a short time before returning on a full-time basis. (Doc. # 2, ¶ 33). Plaintiff asserts that defendants initially granted him this accommodation (Doc. # 2, ¶ 35), but then revoked the accommodation and terminated his employment. (Doc. # 2, ¶ 36). In Count IV, plaintiff asserts that he was discriminated against in violation of the ADA when defendants revoked the initial accommodation and terminated his employment because of his disability. In Count V Musarra alleges the failure to accommodate as a violation of the FCRA, and in Count VI alleges the disability discrimination as a violation of the Florida Civil Rights Act (FCRA). The FCRA is analyzed under the same framework as the ADA, *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir.2000), so the Court's analysis will focus on the ADA.

**A.**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual ...." 42 U.S.C. § 12112(a). The ADA "imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer." *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir.2000),

---

**1.** The parties agree in the Joint Pre–Trial Statement that both defendants constitute a single employer for purposes of plaintiff's claims in this case.

cert. denied, 531 U.S. 927, 121 S.Ct. 304, 148 L.Ed.2d 244 (2000).

The Eleventh Circuit has recognized that ADA claims are to be construed by the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See also Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 776 (2003). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lubetsky*, 296 F.3d at 1305. To establish a prima facie case of discrimination under the ADA, plaintiff must show that he: (1) is disabled, (2) was a qualified individual at the relevant time, and (3) was subjected to unlawful discrimination because of his disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir.2001); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000). By establishing a prima facie case, the plaintiff creates a rebuttable presumption that the challenged action was motivated by a discriminatory intent. *Equal Employment Opportunity Comm'n v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir.2002); *see also Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lubetsky*, 296 F.3d at 1305. If the defendant articulates one or more such reasons, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to prove that the reasons offered by the defendant are a pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817;

*Lubetsky*, 296 F.3d at 1305; *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Joe's Stone Crabs*, 296 F.3d at 1273.

### B.

Defendants argue that Summary Judgment is warranted on Counts III through VI because plaintiff "cannot show that he was a qualified individual with a disability who was entitled to a reasonable accommodation or who was protected by the anti-discrimination provisions of the ADA and the FCRA." (Doc. # 65, p. 2). This is so, defendants argue, because plaintiff applied for and received social security disability insurance benefits and private insurance benefits on the basis of total disability as of the date of his heart attack, and applied for and received unemployment compensation benefits which required that he be able to work.

A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "An individual is 'qualified' if [ ]he, with or without reasonable accommodation, can perform the essential functions and job requirements of the position the individual holds." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.2000). Determination of whether plaintiff is an individual "qualified" for a job is a two step process: First, does he satisfy the prerequisites for the position? Second, can he perform the essential functions of his job either with or without reasonable accommodation? *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th

Cir.2000); *Cramer v. Florida,* 117 F.3d 1258, 1264 (11th Cir.1997).

If plaintiff is unable to perform an essential function of his job, even with an accommodation, he is not a qualified individual. *Davis v. Florida Power & Light Co.,* 205 F.3d at 1305. " 'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl,* 207 F.3d at 1365 (citing 29 C.F.R. § 1630.2(n)(2)(1)). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *Davis,* 205 F.3d at 1305. Consideration must be given to the employer's judgment as to what functions of a job are essential and the employer's written description for that job. *See* 42 U.S.C. § 12111(8). Other factors to consider include: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3); *Davis,* 205 F.3d at 1305; *see also Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522, 1526 (11th Cir.1997).

There is no issue in this case about whether plaintiff satisfies the prerequisites for the position. Rather, the only issue is whether plaintiff could perform the essential functions of his job either with or without reasonable accommodation.

### C.

Defendants assert that because Mr. Musarra "applied for and received disability benefits from the SSA and Premier's private insurance carrier, on the basis that he was totally disabled as of August 25, 2001, Musarra is estopped from claiming that he is a qualified individual who could have performed the essential functions of his job with a reasonable accommodation." (Doc. # 66, pp. 9–10). Plaintiff's Response asserts that "it is and always has been Plaintiff's position that he could perform the essential functions of his job with the reasonable accommodation of a modified work schedule.... [which] consisted of remaining out of work for the month of September 2001, and a return to work on a part-time basis in the month of October 2001." As plaintiff states, the expanded summary judgment record establishes that plaintiff's job as the Director of Purchasing was mostly sedentary in nature. (Docs. # 116, pp. 3–4; # 117, Exhibit A). Plaintiff argues that "[t]here is nothing in the record contradicting Plaintiff's position that he could have, with the requested accommodation, performed the essential functions of his job," (Doc. # 116, p. 3), and that his "job required minimal physical exertion such that Plaintiff would have been able to perform its essential functions with the request accommodation following his heart attack in August of 2001." (Doc. # 116, p. 4). Plaintiff is incorrect.

The Supreme Court has held that receiving social security disability insurance benefits does not automatically estop a plaintiff from claiming discrimination under the ADA. *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The analysis is not actually one of estoppel, but rather focuses on whether plaintiff can show that he is a qualified individual with a disability. The Supreme Court held that to defeat a summary judgment motion, a plaintiff who has applied for and received Social Security Disability Insurance benefits must make an explanation as to the apparent inconsistency between his prior claim that he was totally disabled and his current claim that he was a qualified individual who could perform the work with or

without an accommodation. The explanation must be sufficient to warrant a reasonable juror's conclusion that, assuming the truthfulness and good faith belief in plaintiff's earlier statement of total disability, plaintiff could nonetheless perform the essential functions of his job, with or without a reasonable accommodation. 526 U.S. at 807, 119 S.Ct. 1597. In essence, the Court must decide whether plaintiff's assertions are genuinely in conflict, and if so, evaluate plaintiff's attempt to explain away the inconsistency. *Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 118 (3rd Cir. 2003).

*Cleveland* did not change traditional summary judgment rules. Inn many ways, *Cleveland* is analogous to the rules which have developed to prevent a plaintiff from contradicting his or her prior testimony and thereby defeating a summary judgment motion. The Eleventh Circuit has held that a party cannot create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that contradicts the affiant's previous deposition testimony. *Van T. Junkins & Assoc. v. U.S. Indus. Inc.*, 736 F.2d 656, 657 (11th Cir.1984). Such an affidavit can be disregarded as a sham. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). The Eleventh Circuit has cautioned, however, that courts are to apply this rule "sparingly because of the harsh effect this rule may have on a party's case." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir.1987). In this regard, the Eleventh Circuit stated:

> A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.... To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the tri-

er of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth.... An affidavit may only be disregarded as a sham when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact and that party attempts thereafter to create such an issue with an affidavit that merely contradicts without explanation, previously given clear testimony.

*Tippens,* 805 F.2d at 953–54 (citing *Van T. Junkins,* 736 F.2d at 657) (alteration in original omitted); *see also Lane v. Celotex Corp.,* 782 F.2d 1526, 1530 (11th Cir.1986)(citing *Kennett–Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir.1980))(recognizing same).

As noted above, plaintiff had his heart attack on August 24, 2001, and could not work as of August 25, 2001. On September 4, 2001, plaintiff was evaluated by his physician, who diagnosed heart disease and instructed him to take the rest of September off from work and then to return on a half-time basis through October, 2001. Plaintiff relayed these medical instructions to defendants on September 4, 2001, and defendants approved plaintiff's medical leave request with pay. Defendants terminated plaintiff's employment on September 12, 2001, and informed him of the termination on September 24, 2001.

Plaintiff began receiving unemployment compensation benefits after his August, 2001, heart attack. In connection with plaintiff's receipt of unemployment compensation benefits, he was required to be ready, willing, and able to work. Plaintiff asserted that he was able to work, and made job applications with various employers as required in order to receive the unemployment compensation benefits.

Plaintiff submitted job applications he made dated September 28, October 13, November 11, and December 20, 2001. (Doc. # 117, Exhibit B). Plaintiff received such benefits through the Spring of 2002. (Doc. # 46, pp. 46, 61–62, 65–68).

On December 19, 2001, plaintiff signed an Application for Disability Insurance Benefits with the Social Security Administration. (Doc. # 111, Attachment). This application was signed approximately six weeks after the expiration of the accommodation (a month off, then part-time work through October) plaintiff had requested from his employer. In the Application, plaintiff stated: "I became unable to work because of my disabling condition on August 25, 2001. I am still disabled." Plaintiff agreed to notify the Social Security Administration if his medical condition improved so that he would be able to work, even if he had not yet returned to work. The Application further stated that plaintiff knew that anyone who made a false statement or representation of material fact in an application commits a federal criminal offense, and affirmed that all information given in connection with the claim was true. The Social Security Administration found plaintiff totally disabled, and awarded benefits computed with a disability date of August 25, 2001. Plaintiff continues to receive these benefits.

On January 21, 2002, plaintiff signed a Long Term Disability Claim Employee's Statement (Doc. # 112) for Jefferson Pilot's predecessor, defendants' private insurer, stating he was unable to work because of his heart disease, that he was first unable to work on August 25, 2001, that he had not returned to work, and that he did not expect to return to work, including part-time work. In a Rehabilitation Survey (Doc. # 112), plaintiff signed on September 5, 2002, for Jefferson Pilot, plaintiff

stated he could sit, stand, walk, and drive for only fifteen minutes each; could walk one hundred feet; could drive for one or two miles; could never lift or carry any amount of weight; that he got short of breath, would lose his balance and get dizzy, his face would flush, he would sweat, and would feel pain in his chest. Plaintiff wrote that he was not strong enough to return to work, and always felt tired and weak. Jefferson Pilot awarded plaintiff disability benefits. Plaintiff was awarded long term disability benefits retroactive to August 25, 2001.

It is clear that plaintiff is attempting to perpetrate a sham. To obtain unemployment compensation benefits plaintiff represented that he was ready, willing and able to work. Despite these assertions, plaintiff represented to the Social Security Administration on December 19, 2001, that he became unable to work because of his disabling August 25, 2001, heart attack, and was still disabled as of the December 19, 2001 application. Plaintiff agreed to notify the Social Security Administration if his medical condition improved so that he would be able to work, even if he had not yet returned to work, but failed to do so. The day after plaintiff signed the Social Security disability application, he sent a job application to WCI Home Building Department applying for the job as regional purchasing manager. (Doc. # 117, Exhibit B).

Plaintiff's January 21, 2002, Long Term Disability Claim Employee's Statement (Doc. # 112) for Jefferson Pilot stated he was unable to work because of his heart disease, that he was first unable to work on August 25, 2001, that he had not returned to work, and that he did not expect to return to work, including part-time work. In the September 5, 2002, Rehabilitation Survey (Doc. # 112) plaintiff was

even more factually specific. (See this Order, previous page).

Now, plaintiff states that "it is and always has been Plaintiff's position that he could perform the essential functions of his job with the reasonable accommodation of a modified work schedule.... [which] consisted of remaining out of work for the month of September 2001, and a return to work on a part-time basis in the month of October 2001" and that "[t]here is nothing in the record contradicting Plaintiff's position that he could have, with the requested accommodation, performed the essential functions of his job" (Doc. # 116, p. 3), and that his "job required minimal physical exertion such that Plaintiff would have been able to perform its essential functions with the request accommodation following his heart attack in August of 2001." (Doc. # 116, p. 4). The facts plaintiff previously represented are to the contrary.

Applying the Eleventh Circuit summary judgment standard, it is clear that plaintiff's prior statements were intended to create a sham. Plaintiff gave clear answers to unambiguous questions and asserted that he was totally disabled from work of any kind. Based upon these answers and the supporting medical records, plaintiff received, and continues to receive, disability benefits. Plaintiff now asserts that for ADA purposes he could have worked with the accommodation he requested. There is no evidence to support this, and all the evidence is to the contrary. The undisputed material facts do not show a person who simply has credibility problems, but a situation where plaintiff deliberately and clearly claimed disability, asserted specific facts in support of the claimed disability in order to obtain disability benefits from two sources, and now wants to change his story in order to defeat a summary judgment motion as to his ADA claim. The law does not allow this.

It is also clear that under *Cleveland* plaintiff's prior statements of complete disability and inability to work are in sharp conflict with his current claim that he is and was a qualified individual with a disability. On the one hand, plaintiff told the Social Security Administration and Jefferson Pilot that he was completely disabled, and asserted specific facts to support those assertions; yet during the same time frame he told the State of Florida that he was ready, willing and able to work, and makes the same assertion in this lawsuit. When questioned during his deposition about any explanation for these inherently contradictory positions, plaintiff initially stated it was the result of the different application dates. When it was shown that the dates were in the same period, plaintiff was unable to give any explanation. (Doc. # 46, pp. 68–73). Plaintiff's counsel argues that the explanation lies in the distinction between disability in the Social Security sense and disability with an accommodation in the ADA sense (Doc. # 116, pp. 4–6). Under the facts of this case, this explanation falls far short of that required by *Cleveland*.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Reconsideration of Order Denying Motion for Summary Judgment on Counts III Through VI (Doc. # 109) is **DENIED AS MOOT.**

2. Defendant's Motion for Reconsideration of Order Denying Motion for Summary Judgment on Counts III Through VI (Doc. # 111) is **GRANTED.**

3. The Court's prior Opinion and Order (Doc. # 107) is **VACATED** to the extent that it addresses Defendants' Motion for Summary Judgment (Doc. # 65) as to Counts III through VI.

4. Defendants' Motion for Summary Judgment (Doc. # 65) is **GRANTED** to the extent that judgment will be entered in favor of defendants as to Counts III through VI of the Complaint. The Clerk of the Court shall withhold entry of judgment until the conclusion of the case.